## John Durham

*v.*

## Thomas N. Gill.

1. EVIDENCE—*parol evidence to show agent's authority.* Where the question is, as to the extent of an agent's authority, under a certain letter written him by his principal, and such letter refers to former conversations had between the parties, and is obscure but for the light thrown upon it by such conversations upon the same subject, it is indispensable for a correct solution that the jury should consider such previous conversations, in connection with the letter, and so ascertain the extent of the authority previously conferred, and its limitations.

APPEAL from the Circuit Court of Cook county; the Hon. Erastus S. Williams, Judge, presiding.

The facts in this case are fully stated in the opinion.

Mr. George F. Harding, for the appellant.

Messrs. Scammon, McCagg & Fuller, for the appellee.

Mr. Justice Lawrence delivered the opinion of the Court :

In February, 1867, Durham, the appellant, had about 10,000 bushels of corn in the crib, at Forest City, in Mason county. Being desirous of selling, in order to pay a debt about falling due, and meeting with Gill, the appellee, with whom he was well acquainted, and who was a commission merchant in Chicago, he stated his wishes, and requested Gill to ascertain on what terms a sale could be made in Chicago. Gill wrote, February 6th, stating two propositions he had received, one with an advance of money, and the other without, and on the receipt of this letter, Durham, who lived in Peoria, went to Chicago. Not receiving such an offer as satisfied him, he returned home, leaving the business in the hands of Gill,

with instructions, as he swears, to get two offers for the corn, one with and the other without an advance, leaving to him the choice between them, as he might be able to raise the needed money in Peoria, and in that event, take the higher price for the corn without an advance. On the 13th of February, Gill wrote, they had not been able to make a sale, and saying: "You will please drop us a line to-morrow, and say if we shall make the sale as we talked, if can be done any time this week, or even longer time." On the receipt of this, Durham telegraphed: "Hold on till further advice," and on the 19th, sent to Gill a letter, as follows:

"PEORIA, Ills., Feb'y 19, '67.

"T. N. GILL, Esq., Chicago, Ills.:

"*Dear Sir:*—I telegraphed to you to hold on, because Grier made me an offer of 55c at Forest City, which would have been better than the figures we talked of, but as that would include the shelling and loading on cars, I had rather take my chance in Chicago.

"You will please sell it to the best advantage you can, exercising your own judgment whether to sell now or in a few days. The figures we spoke of—72 and 75—would be satisfactory to me.

"Do the best you can.

"Very truly yours,

"J. DURHAM."

On the receipt of this letter, Gill employed a broker, through whom a sale was effected, and the following contract signed:

No.——                        BROKER'S CONTRACT.

5 cent revenue stamp.                        CHICAGO, 20th Feb'y, 1867.
      canceled.

This certifies that I have this day bought of T. N. Gill & Co., for account of H. C. Russell, 11,000 or two boat-loads, all

thousand bushels of No. one corn, as p. sample, at seventy-five cents afloat, per bushel, to be delivered at seller's option, during month of April, 1867.

To insure the fulfillment hereof, either party can call for margins during the life of this contract.

CLEMENS,<br>*Agent and Broker.*

On the same day, Gill advised Durham of the sale, and that the purchaser would advance 25 or 30 cents per bushel for a discount of two cents per bushel on the price, the advance to be made when the corn could be got into a warehouse, and the warehouse receipts sent to Chicago. To this, Durham replied in a tone of complaint, reminding Gill that his object in selling was to raise money for present use; that the understanding between them was, that the sale was to be made at two rates, of which Durham was to have the choice, and if he could not raise the money he needed in Peoria, he was to have the privilege of drawing for the advance. He further said he could not warehouse the corn for two or three weeks, as the railroad had been injured, but the corn was in his own cribs, and he could send his own warehouse receipt. After some further correspondence, in which Gill insisted on some other security for the delivery of the corn than the warehouse receipt of Durham, before making or procuring the advance, and Durham declining to give any other, the latter informed Gill he should have to sell the corn where it was, in order to raise the money he required. Gill then wrote he would try to raise the money on Durham's warehouse receipt, but before the receipt of this letter, Durham had sold the corn for thirty-three cents per bushel. Corn soon afterwards began to rise in value, and the purchaser, under the broker's contract, called on Gill, from time to time, to "put up margins," as it is termed, according to the provisions of the contract, until finally, on the 18th of April, Gill

20—48TH ILL.

settled with the purchaser by paying $2,862, damages for non-delivery of the corn. For the recovery of the amount thus paid, this suit is brought, and it was proved on the trial, that, so far as concerned the agreement in regard to margins, the sale was in accordance with the established usages in Chicago. The plaintiff recovered, and the defendant appealed.

We have no doubt both these parties acted in accordance with what they deemed their rights, and without any design of doing a wrong. The case is one of hardship to either side, and perhaps its decision is not easy. We shall express no opinion on the merits, but must reverse the judgment and remand the cause for another trial, because, in our opinion, the circuit court committed an error in giving the first instruction for the plaintiff, and in refusing the nineteenth asked for the defendant. From the first instruction for the plaintiff, although perhaps not directly expressed, the jury would certainly understand that the important question, whether the sale was made in conformity with the authority given by Durham, was to be determined merely by reference to his letter of the 19th. In this view we do not concur. We think the letter is to be taken in connection with the previous conversations and correspondence between these parties, and the jury should be told they are to consider whether Gill, in the exercise of ordinary prudence and discretion, had the right to construe that letter, taken in connection with the previous conversations and correspondence, as authorizing him to make such a sale as he did make.

If this letter contains anything inconsistent with the previous authority given to Gill, or with the limitations upon such authority, to that extent it must be regarded as superseding the previous arrangements. All that we hold is, that the letter, in order to be intelligible at all, and in order to determine what Durham meant by it, and how it should have been understood by Gill, must be read and interpreted in the light of what had already occurred. Read by itself, it is incomplete

and enigmatical. Durham says, " the figures we spoke of—
72 and 75—would be satisfactory to me." This would be
unmeaning, if the previous conversations between the parties
did not disclose the fact that they had constantly spoken of
two offers to be obtained, one with and the other without an
advance, the choice between which, as Durham swears, was to
be given to him. Besides, this letter was in reply to one from
Gill, in which he enquires, " if we shall make the sale as we
talked ?" and in determining what Durham meant by his
affirmative answer, we must of necessity have reference to the
previous conversations to which Gill expressly refers for the
extent of his powers. That the letter of Durham authorized a
sale at the prices named is clear, but if, in the former conver-
sations, Durham had constantly insisted upon a sale on such
terms as would entitle him, if he elected to do so, to call for
an immediate advance upon the corn where it then was, the
jury have a right to consider this in determining whether Gill
should have regarded this letter as giving him power to make
an unconditional sale at seventy-five cents, or merely power to
sell at seventy-two, with an advance, or at seventy-five with a
provision that it should be reduced to seventy-two in case
Durham called for an advance, and securing him the right to
call. As we have already remarked, we offer no opinion as to
what Gill should have regarded the extent of his authority,
and we do not find it very easy to arrive at a satisfactory
conclusion, but we think the jury, in settling this, should con-
sider what had previously passed between the parties, whether
in letters or conversation. There is no analogy between this
and an attempt to explain a written contract by parol evidence.
An agent may derive his power in part from letters, and in
part from verbal instructions, and when a hastily written letter
refers to former conversations, and is obscure except for the
light thrown upon it by such conversations upon the same
subject, and the question is as to the extent of the agent's
authority under it, it is indispensable that the jury, in order

accurately to judge of the letter, should know the extent of the authority previously conferred, and its limitations. Only in this way could they place themselves in the position of the parties.

The first instruction for plaintiff should not have been given in the form in which it was drawn, and the nineteenth for defendant, which was in conformity with the principles above set forth, should have been given.

*Judgment reversed.*